UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRAD R. BILLS and NICOLE A. MILLER,

                Plaintiffs,

                                                      Case Number 08-12207

v.                                             Honorable David M. Lawson

                                             Magistrate Judge Donald A. Scheer

JAMES P. ADAIR, MICHAEL D. WENDING,
JAMES D. PRATT, DAN LANE, DETECTIVE
PIKE, NANCY MILLER, and KATHLEEN
KENNEDY,

                Defendants.

_____/

**ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND
RECOMMENDATION, OVERRULING PLAINTIFF'S OBJECTIONS,
DISMISSING CASE WITH PREJUDICE, AND DISMISSING SEVERAL MOTIONS**

This matter is before the Court on the plaintiff's objections to a report filed by Magistrate

Judge Donald A. Scheer recommending *sua sponte* dismissal of the plaintiff's complaint pursuant

to 28 U.S.C. § 1915A. The plaintiff is a prisoner in the custody of the Michigan Department of

Corrections who filed a three-count *pro se* complaint alleging that several state officials and his

former girlfriend's mother conspired to violate his constitutional rights by coercing him into

pleading no contest to the charges that resulted in his present incarceration, that state officials

tortured him while he was awaiting trial on those charges, and that he was denied the equal

protection of the law. The complaint also lists as a plaintiff Nicole A. Miller, the defendant's former

girlfriend, but she did not sign the complaint and has since filed an affidavit disavowing all

connection with and any desire to participate in this lawsuit. The case was referred to Judge Scheer

to conduct all pretrial proceedings under 28 U.S.C. § 636(b)(1)(B). Judge Scheer conducted the

screening required by 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, and on May 30, 2008, he filed a

report recommending that the complaint be dismissed with prejudice. The plaintiff filed objections, but before the Court addressed those objections or the magistrate judge's report, the plaintiff filed several motions seeking a variety of relief. The defendants also filed motions. The Court has reviewed the file, the report and recommendation, and the plaintiff's objections and has made a *de novo* review of the record. The Court concludes that the plaintiff's objections lack merit, and the complaint fails to state a redressable claim because it seeks relief from defendants who are immune from liability, it was filed out of time, and it otherwise does not state a valid cause of action. Therefore, the Court will adopt the recommendation, dismiss the case, and deny the plaintiff's and defendants' several motions as moot.

I.

Plaintiff Brad Bills currently is incarcerated at Cooper Street Correctional Facility in Jackson, Michigan. His girlfriend, whom he describes as his "common law" wife, Nicole Miller, is also a named plaintiff (described in the complaint as a "secondary" plaintiff). Compl. 2. They have three young children together.

Nicole Miller has not signed any filing made to the Court, including the complaint. Mr. Bills appears to claim that she has acquiesced with the lawsuit and therefore is a proper plaintiff for two reasons: first, he expected her to mail in a written statement indicating she wishes to be involved; and second, Bills had a notice served on her that she could object to her being included in the complaint within ten days of service, and she failed to do so. [dkt. #18] (The notice also purports to require her to continuously provide Bills with updates as to her personal address and financial and familial status, contact Bills's "personal representative" Rose Fink once every fourteen days, and permits her to hire an attorney so long as he agrees to represent Bills as well). Nicole Miller has

-2-

filed a written statement, but it unequivocally states: "I do not desire to be a party to this litigation nor do I consent to the relief sought by Plaintiff Bills."  Aff. of Nicole Miller [dkt #28] at ¶ 4.

Nancy Miller is Nicole Miller's mother.  Bills claims that "from 11/22/04 until 05/05/05 she in fact initiated, engaged, and perpetuated a conspiracy against Plaintiff Bills due to a long-standing hatred and vendetta against him and his entire family."  Memo. in Supp. of Compl. at 4.  He also attributes this animosity to a dispute that he had with Nancy Miller regarding who could claim the children as deductions on their income tax returns.  According to the complaint, Nancy Miller exploited the influence she obtained through her employer, Women's Life Insurance, which "has an UNFATHOMABLE and UNLIMITED political influence in St. Clair County," to force Bills into pleading *nolo contendere* to charges of attacking his sister.  *Ibid.*  The details of this alleged conspiracy are laid out below.

According to the complaint, Brad Bills began on November 21, 2004, when he was arrested and charged with the assaulting  his sister, Nicole Bills.  He claims that Nicole Bills "in fact had no injuries to her whatsoever when the Police were called," but after "rehears[ing] her testimony for 3 hours and 51 minutes," Nicole Bills agreed to cooperate.  Memo. in Supp. of Compl. at 9.  After Brad Bills was removed from the residence, defendant Pike, a Port Huron detective, and five other police officers searched the plaintiffs' home without a warrant.

Bills was formally charged with assault with a deadly weapon and interfering with a crime report by threatening to kill or injure.  A preliminary examination was held on November 30, 2004.  According to the complaint, detective Pike, Nancy Miller, and defendant Michael Wending, prosecuting attorney for St. Clair County, threatened Nicole Miller that if she testified on behalf of

-3-

Bills at his preliminary examination they would take away her children. Bills was bound over for trial after the preliminary examination.

On December 20, 2004, Kathleen Kennedy, a probation officer, prematurely prepared a presentence investigation report that the plaintiff claims is biased. Bills says that she identified his two prior convictions as felonies, when they were in fact misdemeanors. She also included a statement from Nancy Miller.

Bills claims that after his preliminary examination, he was held in the county jail for forty-five consecutive days without being permitted to shower or change his clothes or have any visits with his family members. He claims that he was fed only one piece of fruit and two slices of bread per day. He claims that this was carried out by officials acting under orders from prosecutor Wending and Dan Lane, sheriff for St. Clair County. The purpose and effect of this "torture," he believes, was to convince him to plead *nolo contendere*, and it caused his weight to drop from 224 pounds to 156 pounds, his eyes and skin to turn yellow, and his mental functions to diminish. Memo. in Supp. of Compl. at 7-8.

At some point, Bills hired defendant James Pratt to be his attorney. Bills appeared in court three times before the Honorable James Adair, a St. Clair County, Michigan circuit judge, between January 5, 2005 and April 5, 2005. Each time Bills refused to plead guilty, and as punishment he says he was placed into solitary confinement for at least seven days.

On April 5, 2005, the plaintiff pleaded *nolo contendere* pursuant to a plea agreement to charges of felonious assault and interfering with a crime report by threatening to kill or injure. Apparently he was promised by Pratt (or perhaps as part of the plea bargain) that he would only get ninety days in jail and three years probation. According to the complaint, attorney Pratt, Judge

-4-

Adair, and prosecutor Wending had no intention of abiding by the plea bargain. It appears as if Judge Adair received an e-mail from Nancy Miller urging him to increase Bills's sentence because he had abused his children, had threatened to kill his children, and had broken his father's jaw. Compl., Ex. 1. Bills was sentenced to seven to twenty years in prison.

The complaint further contends that the defendants "have taken great pains to insure that the Plaintiffs would not be allowed to have any communication or contact with each other; and have in fact lead [sic] the Muskegon Correction Facility to believe that Plaintiff Nicole Miller was in fact the victim in Plaintiff Bills['s] state case, when in fact she was not." Memo. in Supp. of Compl. at 10. This allegedly has caused the facility to deny visiting access to Nicole Miller.

Bills filed a three-count complaint in this court on May 16, 2008. Count one alleges conspiracy to violate constitutional rights on the theory that the defendants entered into a conspiracy to "coerce the Plaintiffs into entering a guilty plea to pending criminal charges." Compl. at 3. Count two is for "torture," because the defendants subjected the plaintiff Bills to "SEVERE physical or mental pain and suffering," *id.* at 5, apparently in violation of 18 U.S.C. § 2340 which is quoted at length without citation, *see* Memo. in Supp. of Compl. at 6-7. The third count is for "equal protection" because the defendants "engage[d] in acts of conspiracy and torture in violation of their equal protection of the laws, equal privileges, and immunities secured by the United States Constitution through the Fourteenth Amendment. . . ." Compl. at 5. The plaintiff states that he does not want to make the complaint into a petition for a writ of habeas corpus. Compl. at 1.

Plaintiff Bills has submitted a number of filings since the complaint. He filed an emergency motion for preliminary injunction and/or court order, stating that unless the Court orders that Brad

Bills be permitted to visit with Nicole Miller, his relationship with her will be strained.  [dkt. #2].

He also requests that he have access to a prisoner paralegal so that he can prosecute this lawsuit.

He filed a motion for clarification, requesting that the Court answer a series of questions:

> DID DEFENDANT PRATT CIRCUMVENT THE PROPER PROCEDURE BY FILING A RULE 12(b) MOTION TO DISMISS AND/OR SUMMARY JUDGEMENT BEFORE THE COUR T HAS RULED ON THE MAGISTRATE'S PRELIMINARY REPORT AND RECOMMENDATION?

> DOES FED.R.CIV.PRO 17(a) APPLY TO THIS ABOVE CAPTIONED CAUSE OF ACTION NOW BEFORE THE COURT?

> ISN'T IT CORRECT THAT EVEN DESPITE THE PLAINTIFFS PRO SE STATUE [SIC] AND RIGHTS THAT FED.R.CIV.PRO 8(a) STILL APPLIES TO THE PLAINTIFFS?

> THE PLAINTIFFS['] CLAIM DO NOT FALL WITHIN THE IMPLICIT HABEAS EXCEPTION OR UNDER THE HABEAS APPLICATION?

[dkt. # 18].

Bills also filed a motion for *de novo* review of pleadings, where he requests that the Court "review this immediate cause of action de novo. . ."  [dkt. #20].  He also filed a motion to hold Nancy Miller in contempt because she refuses to tell Bills where Nicole Miller and the children are currently living.  [dkt. #21].

After the Court ordered a full case reference to Magistrate Judge Scheer, Judge Scheer filed a report recommending that the plaintiffs' claim for false arrest against detective Pike should be dismissed because it was filed beyond the applicable statute of limitations.  The plaintiff's malicious prosecution claim should be dismissed because such a claim implies the invalidity of his conviction, in violation of *Heck v. Humphrey*, 512 U.S. 477 (1994).  The plaintiff's claim against Judge Adair and prosecuting attorney Wending is barred by absolute immunity for conduct taken in the scope of their duties.  Probation officer Kennedy is entitled to quasi-judicial immunity.  Sheriff Lane

-6-

should be dismissed because he was named apparently as a supervising official, and failure to properly supervise an individual is not actionable unless the supervisor encouraged the specific incident of misconduct, which was not alleged. And the remaining defendants should be dismissed because they are private actors, and their conduct is not "fairly attributable to the State."

## II.

After the Court granted the plaintiff an extension of time, Bills filed nine objections to Judge Scheer's report. Objections to a report and recommendation are reviewed *de novo*. 28 U.S.C. § 636(b)(1). The Sixth Circuit has stated that "[o]verly general objections do not satisfy the objection requirement." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006). "The objections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir.1995). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings . . . believed [to be] in error' are too general." *Spencer*, 449 F.3d at 725 (quoting *Miller*, 50 F.3d at 380).

## A.

In his first objection, Bills argues that the screening provisions of the Prisoner Litigation Reform Act do not apply because Nicole Miller is not a prisoner, and they are not proceeding *in forma pauperis*. *See Michau v. Charleston*, 434 F.3d 725 (4th Cir. 2006). Bills also objects to the magistrate judge's statement that Miller had not signed any of the pleadings. "The Plaintiffs, being pro se litigants, were not aware that Plaintiff Miller's signature was required, as there is no Court Rule or case law stating such." Pl.s' Obj. at 2. The objections state that Bills requested Miller to send in a written statement to the Court, and "once the Court receives this written statement from Plaintiff Miller, she should be considered a Plaintiff." *Ibid.* Bills's third objection avers that he has

a learning disability, with a reading level at the sixth grade and reading comprehension at the fourth grade. He reminds the Court that a *pro se* litigant must be afforded liberal consideration, and suggests that a *pro se* litigant with a learning disability "must be given further consideration and protected by the Court pursuant to 42 USCA § 15044(b)." Pls.' Obj. at 2.

To begin with, the Court does not recognize Nicole Miller as a valid plaintiff in this case. She has not signed pleadings herself. "Every pleading . . . must be signed by . . . a party personally if the party is unrepresented." Fed. R. Civ. P. 11(a). Although Bills promised that Miller would send in her consent to be a plaintiff, she has done exactly the opposite and attempted to distance herself from this case. Although "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel," 28 U.S.C. § 1654, non-attorneys may not represent other parties in a case, *see United States v. 9.19 Acres of Land, More or Less, in Marquette County, Mich.*, 416 F.2d 1244, 1245 (6th Cir. 1969). Nicole Miller is not a proper party to the action, and her status as a non-indigent, non-prisoner has no bearing on the propriety of the screening procedure utilized by the magistrate judge.

Bills paid the filing fee in this case and did not avail himself of the procedure that would have allowed him to proceed without prepayment of fees under 28 U.S.C. § 1915(a). However, 28 U.S.C. § 1915(e) (2)(B) states:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that:
> (B) the action or appeal:
> (i) is frivolous or malicious;
> (ii) fails to state a claim on which relief may be granted; or
> (iii) seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Denton v. Hernandez*, 504 U.S. 25, 32 (1992). "A complaint lacks an arguable basis in law or fact if it . . . is based on legal theories that are indisputably meritless." *Brown v. Bargery*, 207 F.3d 863, 866 (6th Cir. 2000) (citing *Neitzke*, 490 U.S. at 327-28). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, ---, 127 S. Ct. 1955, 1974 (2007). *Sua sponte* dismissal is appropriate if the prisoner civil rights complaint lacks an arguable basis when filed. *Goodell v. Anthony*, 157 F. Supp. 2d 796, 799 (E.D. Mich. 2001).

A *pro se* litigant's complaint is to be construed liberally, *Middleton v. McGinnis*, 860 F. Supp. 391, 392 (E.D. Mich. 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)), and is held to "less stringent standards" than a complaint drafted by counsel. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Nonetheless, such complaints still must plead facts sufficient to show a redressable legal wrong has been committed. Fed. R. Civ. P. 12(b); *Dekoven v. Bell*, 140 F. Supp. 2d 748, 755 (E.D. Mich. 2001). Although a *pro se* litigant's complaint is to be construed liberally, *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007), "[t]he leniency granted to pro se [litigants] . . . is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). In his third objection, Plaintiff Bills claims that he is entitled to an added level of leniency because he has a learning disability. However, the law that he cites for this proposition, 42 U.S.C. § 15001, *et seq.*, merely authorizes funding for a "protection and advocacy system," to provide free or inexpensive legal representation to people with disabilities. *See* 42 U.S.C. § 15041. The rules of civil procedure still apply to the plaintiff, and his complaint must plead facts sufficient to show a legal wrong has been committed from which the plaintiff may be granted relief. Fed. R. Civ. P. 12(b).

-9-

The screening mandated by Congress in § 1915(e)(2) includes the obligation to dismiss civil complaints filed by prisoners if they "fail to state a claim upon which relief may be granted." *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *McGore v. Wigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997) (overruled on other grounds by *Jones v. Bock*, 549 U.S. 199 (2007)).  The plaintiff's first three objections, therefore, are overruled.

B.

Bills's fourth objection disputes the magistrate judge's finding that his claims are barred by the statute of limitations.  He says the applicable period of limitations is four years, not three, and even still, the time limits should not bar his claims because the time does not begin to run until the plaintiff discovered or should have discovered through due diligence a violation of his rights.  Bills says that he did not discover the conspiracy until his appointed appellate attorney discovered the e-mail from Nancy Miller to Judge Adair on March 6, 2006.

The essence of the plaintiff's complaint is that he has been deprived of rights secured by the Constitution or laws of the United States by the actions of the defendants.  Therefore, he necessarily is proceeding under 42 U.S.C. § 1983.  The statute of limitations for claims filed in Michigan based on 42 U.S.C. § 1983 is three years.  In *McCune v. City of Grand Rapids*, 842 F.2d 903 (6th Cir. 1988), the court of appeals explained that "the appropriate statute of limitations to be applied in all section 1983 actions is the state statute of limitations governing actions for personal injury. . . . Michigan's three year statute of limitations for personal injury claims, Mich. Comp. Laws Ann. § 600.5805(8) (West 1987) [now Mich. Comp. Laws § 600.5805(10)], governs section 1983 actions when the cause of action arises in Michigan." *Id.* at 905-06.  The same is true for claims brought under section 1985. *Marlowe v. Fisher Body*, 489 F.2d 1057, 1063 (6th Cir. 1973).

-10-

However, "[t]he date on which the statute of limitations begins to run in a § 1983 action is a question of federal law." *Eidson v. State of Tenn. Dept. of Children's Serv.*, 510 F.3d 631, 634 (6th Cir. 2007). "Ordinarily, the limitations period starts to run 'when the plaintiff knows or has reason to know of the injury which is the basis of his action.'" *Kuhnle Brothers, Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997) (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984)). If a plaintiff is aware of the factual basis for his claim prior to the statute of limitations period, the claim is barred, even if he alleges a conspiracy. *See Baker v. Smith*, 72 F. App'x 339, 341 (6th Cir. Jul. 31, 2003) (holding that the claim plaintiff who alleged a civil conspiracy by court officials to take his children away from him was time barred because he "failed to articulate any continual unlawful acts or omissions occurring" within the limitations period); *see also Moss v. Columbus Bd. of Educ.*, 98 F. App'x 393, 396 (6th Cir. Apr. 8, 2004).

The plaintiff objects that a statute of limitations defense is an affirmative defense that must be proven; however, the Court may dismiss an allegation for failure to state a claim during its screening function on statute of limitations grounds "[i]f a statute of limitations defense clearly appears on the face of a pleading." *Watson v. Wayne County*, 90 F. App'x 814, 815 (6th Cir. Jan. 26, 2004) (citing *Pino v. Ryan*, 49 F.3d 51, 53-54 (2d Cir. 1995)).

Here, the pleadings clearly show that most of the challenged behavior occurred more than three years before the May 16, 2008 filing date, although the magistrate judge dismissed only false arrest claim on this ground, as he should have. *See Wallace v. Kato*, 549 U.S. 384 (2007) (holding that a section 1983 claim based on an illegal arrest accrues at the time of the arrest, not when the convictions were reversed by a state court). Mr. Bills pleaded no contest on April 5, 2005. The complaint contains allegations of acts of torture and conspiracy that transpired prior to his plea.

-11-

Even his allegations on the scope of the conspiracy as it relates to its "primary conspirator," Pl.s' Obj. at 9, are temporally limited. *See* Memo. in Supp. of Compl. at 4 ("[F]rom 11/22/04 until 05/05/05 [Nancy Miller] in fact initiated, engaged, and perpetuated a conspiracy against Plaintiff Bills due to a long-standing hatred and vendetta against him and his entire family."). The only behavior that is within the statute of limitations is the supposed limitation on visitation between Bills and Nicole Miller, which is alleged to be ongoing. However, such visitation is regulated by the Department of Corrections, which is not a party to this case, and this is not the sort of continuing violation that brings the case within the statute of limitations. *See Baker*, 72 F. App'x at 341.

The plaintiff claims that he was not aware of the conspiracy until 2006. However, according to the complaint, Bills was aware of the injury – the "torture," the incarceration, the separation from his family – when it occurred in 2004 and 2005. His claim that he only learned that Nancy Miller was the mastermind behind this grand conspiracy in 2006 does not delay the onset of the statute of limitations, because the harms were complete and actionable when they occurred. Therefore, his fourth objection will be overruled.

### C.

In his fifth objection, Bills disagrees with the magistrate judge's finding that several of the defendants are entitled to immunity. In his ninth objection, the plaintiff claims that the defendants forfeited any claims of immunity, and the magistrate judge erred by dismissing on immunity grounds when the defendants had yet to plead this affirmative defense. However, sections 1915(e)(2)(B)(iii) and 1915A explicitly requires the Court to dismiss any claim filed by a prisoner that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915(e)(2)(B)(iii), 1915A(b)(2). The magistrate judge found judicial, prosecutorial, and quasi-judicial immunity

applied to various defendants, and he dismissed the plaintiff's claims against Judge Adair, prosecutor Wending, and probation officer Kennedy as a result.  The plaintiff objects on the grounds that a defendant should not be immune for intentionally violating another's constitutional rights.

"Judges are generally absolutely immune from civil rights suits for money damages." *Ireland v. Tunis*, 113 F.3d 1435, 1440 (6th Cir. 1997) (citing *Mireles v. Waco*, 502 U.S. 9, 9 (1991); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997)).  Judicial immunity is abrogated in only when a judge is not acting in a judicial capacity, or when the judge takes action in the absence of all jurisdiction.  *Mireles*, 502 U.S. at 11-12 (internal citations omitted).

Whether an action is "judicial" depends on the "'nature' and 'function' of the act, not the 'act itself.'" *Id.* at 13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)).  This functional analysis generally turns on two factors set forth by the Supreme Court in *Stump*.  First, rather than looking at a particular act in isolation, courts should "look to the particular act's relation to a general function normally performed by a judge." *Mireles*, 502 U.S. at 13.  Second, courts must assess whether the parties dealt with the judge in his or her judicial capacity.  *Stump*, 435 U.S. at 362.  An act "'does not become less judicial by virtue of an allegation of malice or corruption of motive.'" *Sparks v. Character and Fitness Committee of Kentucky*, 859 F.2d 428, 432 (6th Cir. 1988) (quoting *Forrester v. White*, 484 U.S. 219, 227 (1988)).

Quasi-judicial immunity "extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994).  Probation officers are entitled to such immunity when acting within the scope of her duties as a probation officer.  *Loggins v. Franklin County, Ohio*, 218 F. App'x 466, 476 (6th Cir. Mar. 1, 2007).

-13-

"Absolute prosecutorial immunity, like absolute judicial immunity, is a common law principle that shields a prosecutor from § 1983 liability." *Cooper v. Parrish*, 203 F.3d 937, 946 (6th Cir. 2000). A prosecutor has absolute immunity for all acts "intimately associated with the judicial phase of the criminal process," such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). The Sixth Circuit has held:

> Those acts that occur in the course of the prosecutor's role as an advocate for the state, e.g., acts taken to prepare for the initiation of judicial proceedings or to prepare for trial, are protected by absolute immunity. *Buckley*, 509 U.S. at 273; *see also Ireland*, 113 F.3d at 1444-45. By contrast, a prosecutor who "performs the investigative functions normally performed by a detective or police officer" such as "searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested" is entitled only at most to qualified immunity.

*Cooper*, 203 F.3d at 947. A prosecuting attorney is absolutely immune from charges that he told a witness to lie. *See Spurlock v. Thompson*, 330 F.3d 791, 797-98 (6th Cir. 20030. As with judicial immunity, the motives of the prosecutor are irrelevant for purposes of immunity. *Eldridge v. Gibson*, 332 F.3d 1019, 1021 (6th Cir. 2003).

Judge Adair's presiding over Bills's criminal case is clearly a judicial function, for which he is entitled to judicial immunity. Similarly, Wending's decision to prosecute, his advocacy in court, and his communication with witnesses are all part of his role as an advocate for which he is entitled to absolute prosecutorial immunity. Finally, Kennedy is accused of doing little more than preparing a biased presentence investigation report. Preparing such a report falls squarely within a probation officer's duties, and she is entitled to absolute immunity for this behavior. The plaintiff's fifth and ninth objections are overruled.

-14-

D.

In his sixth objection, the plaintiff claims that the magistrate judge erred when he assumed the plaintiffs were proceeding under 42 U.S.C. §§ 1985 & 1986. This objection makes little sense, since the plaintiff explicitly pleaded these statutory provisions in his complaint. *See* Compl. at 1. The plaintiff also believes the magistrate judge erroneously sought to construe his complaint as a habeas petition, despite his express disavowal of this intent. Moreover, the plaintiff also disclaims that he is filing a complaint for false arrest and malicious prosecution. "In this case, the Plaintiffs are essentially filing a complaint for the destruction of their familial relationship which is in fact constitutionally protected. . . ." Pl.s' Obj. at 6.

This objection lacks merit. The essence of the plaintiff's complaint is an attack on the procedures that led to his conviction and sentence for assaulting his sister with a deadly weapon. He says he was falsely accused by people who conspired against him and coerced him into pleading no contest under a plea bargain that was never fulfilled. Under *Preiser v. Rodriguez*, 411 U.S. 475, 484-93 (1973), the only vehicle for challenging the validity of a conviction is a petition for a writ of habeas corpus. This rule applies equally to requests for monetary relief, *Heck v. Humphrey*, 512 U.S. 477 (1994), declaratory relief, *Edwards v. Balisok*, 520 U.S. 641 (1997), and injunctive relief, *Clarke v. Stalder*, 154 F.3d 186, 189-90 (5th Cir. 1998).

In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), the Supreme Court held that a prisoner could not "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" as long as the underlying conviction remained intact. The Court held that such a claim was barred unless "the conviction or sentence has been reversed on direct appeal, expunged by executive order,

-15-

declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.* at 487. The Court expressly rejected the plaintiff's claim for damages for a prosecution that he claimed was unconstitutional. *Id.* at 490.

"'These cases, taken together, indicate that a state prisoner's § 1983 action is barred . . . – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – if success in that action would necessarily demonstrate the invalidity of confinement or its duration.'" *Thomas v. Eby*, 481 F.3d 434, 439 (6th Cir. 2007) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005)).

The plaintiff claims that the defendants conspired and tortured him to force him to plead no contest to the charges for which he was convicted. Those allegations would imply that his plea was not voluntary, and the object of the conspiracy was to accomplish this goal. In other words, he is attempting to "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid." *See Heck*, 512 U.S. at 486-87. Habeas corpus, which the complaint expressly disavows, is the proper method for doing that.

Objection six, therefore, is overruled.

E.

In objection seven, the plaintiff argues that the magistrate judge erred when he concluded that defendants Miller and Pratt were not state actors, so they could not be named in a § 1983 action. Because the plaintiff is alleging conspiracy with government officials, such private actors can be included.

-16-

To establish a prima facie case under 42 U.S.C. § 1983, a civil rights plaintiff must establish that: (1) the defendant acted under color of state law; and (2) the offending conduct deprived the plaintiff of rights secured by federal law. *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998) (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). "If a plaintiff fails to make a showing on any essential element of a § 1983 claim, it must fail." *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001).

To show a civil conspiracy to violate 42 U.S.C. § 1983, a plaintiff must demonstrate that (1) the defendants entered into an agreement to violate the plaintiff's rights; (2) the defendants shared a general objective to deprive the plaintiff of his rights; and (3) an overt act was committed in furtherance of the conspiracy to deprive the plaintiff of his civil rights that caused injury to the plaintiff. *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003). However, "conspiracy claims must be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1539 (6th Cir. 1987). In order to be held liable for a conspiracy under section 1983, a "defendant's actions must be fairly attributable to the state." *Collyer v. Darling*, 98 F.3d 211, 232 (6th Cir. 1996). "There are three tests employed by the courts to determine whether the challenged conduct is fairly attributable to the state: (1) the public function test, (2) the state compulsion test and (3) the symbiotic relationship or nexus test." *Ibid.*

"To succeed in establishing a § 1985(3) claim, the plaintiff must demonstrate '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Center for Bio-Ethical*

-17-

*Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (quoting *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003)).   "A § 1985(3) complaint must 'allege both a conspiracy and some class-based discriminatory animus behind the conspirators' action.'"   *Ibid.* (quoting *Newell v. Brown*, 981 F.2d 880, 886 (6th Cir. 1992)).

Whether proceeding under 42 U.S.C. § 1985 or for civil conspiracy under § 1983, a plaintiff must show some evidence of coordinated actions between the alleged conspirators.   *See Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999); *Collyer*, 98 F.3d at 229.   Conclusory, vague accusations that do not describe some "meeting of the minds" cannot state a claim for relief under 42 U.S.C. §§ 1983 or 1985.   *See Naguib v. Ill. Dep't of Prof'l Regulation*, 986 F. Supp. 1082, 1092 (N.D. Ill. 1997); *Pollack v. Nash*, 58 F. Supp. 2d 294, 299-300 (S.D.N.Y. 1999).

The plaintiff's objection that private citizens can be held liable for conspiracy to deprive someone of their civil rights is well taken for any claims under section 1985(3).   *Dennis v. Sparks*, 449 U.S. 24, 29 (1980); *Collyer*, 98 F.3d at 233.   However, the plaintiff's section 1985(3) must claim fails because he has not alleged any "class-based discriminatory animus" whatsoever.   *See Center for Bio-Ethical Reform, Inc.*, 477 F.3d at 832.

Furthermore, the conclusion that attorney Pratt and Ms. Miller are not liable under section 1983 is sound.   Their behavior is not "fairly attributable to the state" under any of the tests recognized by the Sixth Circuit.   *See Collyer*, 98 F.3d at 232.   In addition, the plaintiff fails to meet the other requirements of pleading a conspiracy.   Instead, he offers conclusory statements that there was a conspiracy, but fails to articulate the details of the conspiracy's object and purpose and the overt acts allegedly committed in furtherance and by whom.   The plaintiff's objection to dismissal of this claim is overruled.

-18-

F.

The plaintiff's eighth objection does not seem to name any error by the magistrate judge, but recounts the facts that he believes shows the conspiracy. This objection is not "clear enough to enable the district court to discern [an] issue[] that [is] dispositive and contentious." *Miller,* 50 F.3d at 380. However, in conducting a *de novo* review, the Court registers its agreement with the magistrate judge's rejection of the plaintiff's torture and equal protection claims, such as they are.

The plaintiff's claim for torture, apparently premised on a federal criminal statute, 18 U.S.C. §§ 2340 & 2340A, must fail for failing to state a claim. "The United States . . . enacted 18 U.S.C. §§ 2340 and 2340A to fulfill its obligations under Articles 4 and 5 [of the Convention Against Torture]. Yet, those sections criminalize torture outside the United States; they do not provide civil redress for torture within the United States. For the latter, a plaintiff must pursue her claim under the appropriate domestic law, which might include the [Federal Tort Claims Act] or the Eighth Amendment, and meet the jurisdictional and substantive requirements for civil relief." *Renkel v. United States*, 456 F.3d 640, 644-45 (6th Cir. 2006). The plaintiff cannot proceed under this statute.

The complaint might be construed to state a claim under § 1983 for this behavior. However, the claim is time-barred, for the reasons explained above.

It is unclear on what basis the plaintiff rests his equal protection claim. The Sixth Circuit has identified the elements that must be met for an equal protection claim for selective prosecution:

> First, [an official] must single out a person belonging to an identifiable group, such as those of a particular race or religion, or a group exercising constitutional rights, for prosecution even though he has decided not to prosecute persons not belonging to that group in similar situations. Second, [the official] must initiate the prosecution with a discriminatory purpose. Finally, the prosecution must have a discriminatory effect on the group which the defendant belongs to.

-19-

> *With regard to the first element, it is an absolute requirement that the plaintiff make at least a prima facie showing that similarly situated persons outside her category were not prosecuted.* Furthermore, there is a strong presumption that the state actors have properly discharged their official duties, and to overcome that presumption the plaintiff must present clear evidence to the contrary; the standard is a demanding one.

*Harajli v. Huron Tp.*, 365 F.3d 501, 508 (6th Cir. 2004) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000)) (emphasis in original).  The plaintiff failed to allege that any similarly situated person was treated differently than the plaintiff, so this claim must also fail.

III.

The Court agrees with Judge Scheer that the complaint fails to state a claim and must be dismissed under 28 U.S.C. §§ 1915(e)(2)(B)(ii), (iii), and 1915A(b).

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation [dkt #4]is **ADOPTED**, the plaintiff's objections [dkt #14] are **OVERRULED**, and the complaint is **DISMISSED WITH PREJUDICE.**

It is further **ORDERED** that the plaintiff's emergency motion for preliminary injunction [dkt. #2]; the defendants' motion to extend time in which to file responsive pleading [dkt. #7]; the defendants' second motion to extend time in which to file responsive pleading [dkt. #11]; the defendants' motion to dismiss [dkt. #12]; the plaintiff's motion for order of clarification [dkt. #18]; the plaintiff's motion for de novo review of the pleadings [dkt. #20], and the plaintiff's motion to hold Nancy Miller in contempt [dkt. #21] are **DISMISSED as moot**.


s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   February 23, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 23, 2009.

s/Felicia M. Moses
FELICIA M. MOSES